Michael R. Lozeau (State Bar No. 142893)
Douglas J. Chermak (State Bar No. 233382)
E-mail: michael@lozeaudrury.com
         doug@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)

Attorneys for Plaintiff
CENTER FOR COMMUNITY ACTION
AND ENVIRONMENTAL JUSTICE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE, a non-profit association,<br><br>Plaintiff,<br><br>vs.<br><br>FRIENDS OF RIVERSIDE AIRPORT, LLC., a limited liability corporation,<br><br>Defendant. | Case No.  5:17-cv-01091-JGB-KK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>Date:  August 14, 2017<br>Time:  9:00 a.m.<br>Courtroom:  1<br>Judge:  Hon. Jesus G. Bernal |

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL AND PRODECURAL BACKGROUND .......................................2

III.  LEGAL BACKGROUND AND STANDARD OF REVIEW ...........................3

    A.  Clean Water Act .......................................................................................4

    B.  California's General Construction Storm Water Permit ..............................4

    C.  Standard Governing Dismissal Under Rule 12(b)(6) ..................................6

    D.  Standard Governing Dismissal Under Rule 12(b)(1) ..................................7

IV.  LEGAL ARGUMENT ........................................................................................7

    A.  CCAEJ Has Standing to Bring the Present Action .....................................8

        1.  CCAEJ Sufficiently Alleges Discharges to Waters of the United States .....................................................................................................8

        2.  CCAEJ's FAC Sufficiently Alleges Ongoing Violations ................11

    B.  CCAEJ's FAC Provides Sufficient Legal and Factual Basis in Support of Its Allegations that Defendant is in Violation of the General Permit......15

        1.  CCAEJ has Alleged Sufficient Legal and Factual Support for Its First Cause of Action ........................................................................16

        2.  CCAEJ has Alleged Sufficient Legal and Factual Support for Its Second Cause of Action .....................................................................17

        3.  CCAEJ has Alleged Sufficient Legal and Factual Support for Its Third Cause of Action that Defendant Failed to Implement BAT/BCT ..........................................................................................20

        4.  CCAEJ has Alleged Sufficient Legal and Factual Support for Its Fourth Cause of Action.....................................................................22

5.   CCAEJ has Alleged Sufficient Legal and Factual Support for Its Fifth Cause of Action that Defendant Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan....24

C.   CCAEJ Should Be Granted Leave to Amend.................................................25

V.   CONCLUSION..........................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................*passim*

*Ass'n to Protect Hammersley v. Taylor Res.*,
   299 F.3d 1007 (9th Cir. 2002) ....................................................................... 14

*Baykeeper v. Int'l Metals Ekco, Ltd.*,
   619 F.Supp.2d 936 (C.D. Cal. 2009) ........................................................... 4, 18

*Baykeeper v. Kramer Metals, Inc.*,
   619 F.Supp.2d 914 (C.D. Cal. 2009)............................................. 4, 16, 18, 21

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 6

*Cactus Corner, LLC v. U.S. Dept. of Agric.*,
   3346 F.Supp.2d 1075 (E.D. Cal. 2004)......................................................... 13

*Cal. Sportfishing Prot. Alliance v. All Star Auto Wrecking, Inc.*,
   860 F.Supp.2d 1144 (E.D. Cal. 2012) ............................................................ 4

*Cal. Sportfishing Prot. Alliance v. Cal. Ammonia Co.*,
   2007 U.S. Dist. LEXIS 8845 (E.D. Cal. 2007) ............................................ 21

*California Sportfishing Protection Alliance v. City of W. Sacramento*,
   905 F.Supp.792 (E.D. Cal. 1995) ................................................................. 14

*Chang v. Chen*,
   80 F.3d 1293 (9th Cir. 1996)......................................................................... 23

*City of L.A. v. Wells Fargo & Co.*,
   2014 U.S. Dist. LEXIS 72818 (C.D. Cal. 2014) ............................................ 7

*City of Milwaukee v. Ill.*,
   451 U.S. 304 (1981) ........................................................................................ 3

*Coalition for a Sustainable Delta v. Fed. Emerg. Mgmt. Agency*,
   812 F.Supp.2d 1089 (E.D. Cal. 2011) .................................................................... 14

*Coalition for a Sustainable Delta v. McCamman*,
   725 F.Supp.2d 1162 (E.D. Cal. 2010) .................................................................... 14

*Comm. to Save Mokelumne River v. East Bay Mun. Util. Dist.*,
   13 F.3d 305 (9th Cir. 1993) ................................................................................ 3, 4

*Conley* v. *Gibson*,
   355 U.S. 41, 47 (1957) ............................................................................................ 6

*Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*,
   777 F. Supp. 173 (D. Conn. 1991) ......................................................................... 14

*Doe v. Holy See*,
   557 F.3d 1066 (9th Cir. 2009) ................................................................................. 7

*Ecological Rights Foundation v. Sierra Pacific Industries*,
   slip op. No. C-01-0520 MEJ (N.D. Cal. 2002) ....................................................... 4

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................... 25

*Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*,
   301 F.Supp.2d 1102 (N.D. Cal. 2004) .................................................................. 3, 4

*Friends of Earth v. Conrail*,
   768 F.2d 57 (2d Cir. 1985) ................................................................................... 14

*Friends of the Earth v. Carey*,
   535 F.2d 165 (2d Cir. 1976) ................................................................................. 14

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*,
   5484 U.S. 49 (1987) ............................................................................................. 11

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*,
   2012 U.S. Dist. LEXIS 44311 (E.D. Cal. 2012) ...................................................... 7

*Hawai'i Wildlife Fund v. County of Maui*,

OPPOSITION TO MOTION TO DISMISS                                    5:17-cv-01091-JGB-KK

v

24 F.Supp.3d 980 (D. Haw. 2014) .................................................................. 14

*Hudson Riverkeeper Fund v. Orange & Rockland Utils.*,
4835 F.Supp.160 (S.D.N.Y. 1993) ................................................................ 21

*Intri-Plex Techs., Inc. v. Crest Group, Inc.*,
499 F.3d 1048 (9th Cir. 2007) ................................................................ 19, 24

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........................................................................ 13

*Md. Dep't of the Env't v. Riverkeeper*,
447 Md. 88 (Md. 2016) ................................................................................. 16

*Metro Hydroelectric Co., LLC v. Metro Parks*,
541 F.3d 605 (6th Cir. 2008) .......................................................................... 7

*N. Cal. River Watch v. City of Healdsburg*,
496 F.3d 993 (9th Cir. 2007) ....................................................................... 8, 9

*NRDC v. County of L.A.*,
8725 F.3d 1194 (9th Cir. 2013) ................................................................... 16

*NRDC v. EPA*,
822 F.2d 104 (D.C. Cir. 1987) ....................................................................... 3

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) ........................................................................ 25

*Piney Run Pres. Ass'n v. County Comm'rs*,
268 F.3d 255 (4th Cir. 2001) ........................................................................ 16

*Rapanos v. United States*,
547 U.S. 715 (2006) .................................................................................. 9, 10

*Royal Ins. Co. of Am. v. Sw. Marine*,
194 F.3d 1009 (9th Cir. 1999) ...................................................................... 25

*S. Appalachian Mt. Stewards v. A & G Coal Corp.*,
758 F.3d 560 (4th Cir. 2014) ........................................................................ 16

*Safe Air v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................. 7

*Santa Monica BayKeeper v. SunLite Salvage,*
   slip op., Case No. Civ.99-4578 WDK (C.D. Cal. 1999) ........................................ 18

*Savage v. Glendale Union High Sch. Dist. No. 205*,
   343 F.3d 1036 (9th Cir. 2003) ................................................................................. 7

*S.F. Baykeeper v. Levin Enterprises, Inc.*,
   2013 U.S. Dist. LEXIS 178501 (N.D. Cal. 2013) ............................................. 5, 17

*Sherrill v. Mayor & City Council*,
   31 F.Supp.3d 750 (D. Md. 2014) ........................................................................... 16

*Sierra Club v. Union Oil Co. of California*,
   853 F.2d 667 (9th Cir. 1988) ............................................................................ 11, 12

*United States v. Moses*,
   496 F.3d 984 (9th Cir. 2007) ................................................................................... 9

*United States v. Riverside Bayview Homes*,
   106 S. Ct. 455 (1985) .............................................................................................. 9

*Verse Two Props., LLC v. MedPlast Fremont, Inc.*,
   2015 U.S. Dist. LEXIS 152800 (N.D. Cal. 2015) .................................................. 11

**STATUTES**

<u>**Clean Water Act, 33 U.S.C.**</u>
§ 1251(a) ...................................................................................................................3
§ 1311(a) ................................................................................................................4, 5
§ 1311(b)(2)(A), (C), (D), (F) ...................................................................................6
§ 1311(b)(2)(E) .........................................................................................................6
§ 1314(a)(4) ...............................................................................................................6
§ 1314(b)(2) ..............................................................................................................6
§ 1314(b)(2)(B) ........................................................................................................21

§ 1314(b)(4) ....................................................................................................6

§ 1314(b)(4)(B) .............................................................................................21

§ 1319(d) ....................................................................................................4, 19

§ 1319(g)(6) .................................................................................................14

§ 1319(g)(6)(A)(ii) and (iii) ........................................................................14

§ 1342...........................................................................................................4

§ 1342(b) ......................................................................................................4

§ 1342(k) ......................................................................................................4

§ 1342(p) ......................................................................................................5

§ 1342(p)(2)(B) ............................................................................................4

§ 1362(7) ......................................................................................................8

§ 1365...........................................................................................................2

§ 1365(a) .....................................................................................................19

**Code of Federal Regulations, 40 C.F.R.**

§ 122.2..........................................................................................................8

§ 122.26(b)(14) ............................................................................................4

§ 122.41(a) ...............................................................................................4, 19

§ 401.15 ........................................................................................................6

§ 401.16 ........................................................................................................6

**Federal Rules of Civil Procedure**

§ 12(b)(1) .............................................................................................7, 8, 12

§ 12(b)(6) ................................................................................................6, 7

**Federal Register**

55 Fed. Reg. 47, 990 (1990) .......................................................................4

## I.  INTRODUCTION

Plaintiff Center Community Action and Environmental Justice ("Plaintiff" or "CCAAEJ") brings this citizen enforcement action under the federal Clean Water Act to address Defendant Friends of Riverside Airport's ("FRA") continuous and ongoing violations of California's General Permit for Storm Water Discharges Associated With Construction and Land Disturbance Activities ("General Permit").  Defendant is engaged in a lengthy construction project in Riverside that is situated adjacent to the shoreline of the Santa Ana River and is the subject of this action ("Site").  The alleged permit violations arise out of Defendant's failure to comply with numerous terms of the General Permit, including a prohibition against discharging polychlorinated biphenyls ("PCBs") to surface waters, a prohibition against discharging water with elevated pollutants to receiving waters, and requirements to implement requisite pollution control technologies for storm water discharges.

CCAEJ's First Amended Complaint ("FAC") sets forth straightforward causes of action that are well supported by underlying factual allegations.  Assumed as true, and with inferences drawn in Plaintiff's favor, these allegations sufficiently allege both Plaintiff's standing to bring this action as well as set forth sufficient claims for relief.  CCAEJ has sufficiently alleged that the Site's storm water discharges flow to waters of the United States.  It has also adequately alleged that all of the violations in the FAC are ongoing and continuous.

Defendant's Motion to Dismiss is based on a pervasive lack of understanding about the requirements of the General Permit coupled with the necessary pleadings requirements at the initial stage of litigation.  Much of the motion mischaracterizes Plaintiff's pleadings and allegations, and advances irrelevant, improper, or unsupported arguments and factual assertions.  As a result, the motion is without merit.  Moreover, although CCAEJ filed a FAC to correct any perceived deficiencies raised in Defendant's Motion to Dismiss challenging CCAEJ's original complaint, Defendant has refused to

withdraw its largely moot motion.[1]  CCAEJ respectfully requests that the Court deny Defendant's motion in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff CCAEJ is a non-profit public benefit corporation that is dedicated to working with communities to advocate for environmental justice and pollution prevention.  FAC (Dkt. No. 18), ¶ 7.  CCAEJ has members living in the community adjacent to the Site and the Santa Ana River Watershed who enjoy using the Santa Ana River and its tributaries for recreation and other activities.  *Id*., ¶ 8.  This case is a citizen suit enforcement action brought by CCAEJ under section 505 of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1365.  *Id*., ¶ 1.  On March 21, 2017, CCAEJ provided Defendant with a notice of its violations of the CWA ("Notice of Violations"), alleging that Defendant has violated and continue to violate the terms of the General Permit[2] at FRA's construction site located in Riverside, California.  *Id*., ¶ 2; FAC, Exhibit ("Ex.") A (Dkt. No 18-1).  In that Notice of Violations, CCAEJ indicated its intention to file suit against Defendant, and contemporaneously provided such notice to the requisite state and federal agencies.  FAC, Ex. A.

On June 1, 2017, after more than sixty days had passed since notice was served on the Defendant and the state and federal agencies, CCAEJ filed a Complaint against FRA, initiating this action.  On July 7, 2017, FRA filed a Motion to Dismiss the Complaint.  To resolve Defendant's perceived deficiencies with the Complaint, on July 14, 2017, CCAEJ

---

[1] CCAEJ notes that Defendant's Motion to Dismiss challenges six causes of action; however, the FAC removed the Sixth Cause of Action.

[2] The permit that CCAEJ alleges FRA is violating is the "National Pollutant Discharge Elimination System (NPDES) General Permit for Storm Water Discharges Associated With Construction And Land Disturbance Activities, NPDES Permit No. CAS000002, State Water Resources Control Board ("State Board") Order No. 2009-0009-DWQ as amended by Order No. 2010-0014-DWQ and Order No. 2012-0006-DWQ."  A copy of this permit is attached to Defendant's Request for Judicial Notice ("Def. RJN") (Dkt. No. 13), Exhibit B.

filed a First Amended Complaint.

In its FAC, CCAEJ alleges, *inter alia*, that the Site discharges PCBs to surface waters in violation of the General Permit's explicit provision against this practice.  FAC, ¶¶ 97-100.  It alleges that Defendant has discharged storm water containing excessive levels of PCBs, turbidity, lead, copper, zinc, and chemical oxygen demand ("COD") into waters of the United States in excess of water quality objectives and water quality standards incorporated by the General Permit.  *Id*., ¶¶ 102-108.  CCAEJ further alleges that the Site has failed to apply requisite pollution control technologies meeting the General Permit's Best Available Technology Economically Achievable for toxic and nonconventional pollutants ("BAT") and the Best Conventional Pollutant Control Technology for conventional pollutants ("BCT") (collectively "BAT/BCT") technology requirements.  *Id*, ¶¶ 110-112.  It also alleges that the sediment basins implemented at the Site are not in conformance with the standards required by the General Permit.  *Id*., ¶¶ 114-117.  It finally alleges that Defendant failed to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP").  *Id*., ¶¶ 119-124.

Based upon these allegations, CCAEJ seeks civil penalties and injunctive relief.

## III.   LEGAL BACKGROUND AND STANDARD OF REVIEW

### A.   Clean Water Act.

The CWA aims "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  The CWA "establishes a comprehensive statutory system for controlling water pollution," which is "[b]uilt on a fundamental premise that the unauthorized discharge of any pollutant by any person shall be unlawful."  *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 301 F.Supp.2d 1102, 1105 (N.D. Cal. 2004) ("*EPIC*") (citation and internal quotation marks omitted); *City of Milwaukee v. Ill.*, 451 U.S. 304, 310-11 (1981); *see also NRDC v. EPA*, 822 F.2d 104, 123 (D.C. Cir. 1987) ("The first principle of the statute is, as we have seen, that it is unlawful to pollute at all."); *Comm. to Save Mokelumne River v. East Bay Mun. Util.*

*Dist.*, 13 F.3d 305, 309 (9th Cir. 1993).  To this end, CWA section 301(a) prohibits the discharge of any pollutant into waters of the United States unless the discharge is in compliance with the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to CWA section 402.  § 301(a), 33 U.S.C. § 1311(a); § 402, 33 U.S.C. § 1342; *EPIC*, 301 F.Supp.2d at 1105.

In 1987, Congress amended the CWA to add section 402(p), 33 U.S.C. § 1342(p), which established, among other objectives, a specific NPDES-permitting requirement for "stormwater discharges … associated with industrial activity."  § 402(p)(2)(B), 33 U.S.C. § 1342(p)(2)(B); *See Cal. Sportfishing Prot. Alliance v. All Star Auto Wrecking, Inc.*, 860 F.Supp.2d 1144, 1153 (E.D. Cal. 2012); *Baykeeper v. Kramer Metals, Inc.*, 619 F.Supp.2d 914, 919 (C.D. Cal. 2009); *Baykeeper v. Int'l Metals Ekco, Ltd.*, 619 F.Supp.2d 936, 940 (C.D. Cal. 2009).  Any violation of a prohibition, limitation or other term or condition embodied in an NPDES permit constitutes a violation of the Act itself.  33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §122.41(a); *See* Plaintiff's Request for Judicial Notice ("Pl. RJN"), Ex. A (*Ecological Rights Foundation v. Sierra Pacific Industries*, slip op. No. C-01-0520 MEJ (N.D. Cal. 2002), p. 2.).  To establish a violation of the CWA, a plaintiff need only prove that the defendant violated the terms and conditions of its NPDES permit.  33 U.S.C. §§1311(a), 1342(k).

In 1990, the United States Environmental Protection Agency ("EPA") adopted regulations specifying what activities were considered "industrial" and requiring discharges of storm water associated with those activities to obtain coverage under NPDES permits. 55 Fed. Reg. 47, 990 (1990); 40 C.F.R. § 122.26(b)(14).  The regulations provide that discharges of storm water to waters of the United States from construction projects that encompass one or more acres of soil disturbance are effectively prohibited unless the discharge is in compliance with an NPDES Permit.

## B.    California's General Construction Storm Water Permit.

Section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own EPA-

approved permit program for discharges.  In California, the State Water Resources Control Board ("State Board") has issued a single, statewide General Permit applicable to all storm water discharges associated with construction and land disturbances.[3] Defendant's Request for Judicial Notice ("Def. RJN") (Dkt. No. 13), Ex. B.  On August 19, 1999, the State Water Board reissued the General Construction Storm Water Permit (Water Quality Order 99-08-DWQ).  On December 8, 1999 the State Water Board amended Order 99-08- DWQ to apply to sites as small as one acre.  The General Permit applicable to the present action was adopted by the State Board on September 2, 2009, pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).  It became effective on July 1, 2010.  An amendment to the Permit became effective on February 14, 2011, and a subsequent amendment became effective on July 17, 2012.

In order to discharge storm water lawfully in California, dischargers from construction projects greater than one acre must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.  33 U.S.C. § 1311(a).  Among numerous requirements, the General Permit mandates that permittees refrain from violating any discharge prohibitions contained in applicable Basin Plans or statewide water quality control plans.  Def. RJN, Ex. B, p. 74 (Discharge Prohibitions III(A)).  It prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality objectives or water quality standards contained in, *inter alia*, the California Toxics Rule or the applicable Regional Water Quality Control Board's ("Regional Board") Water Quality Control Plan (Basin Plan).  *Id*., p. 85 (Receiving Water Limitation VI(C)).  It requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional

---

[3] "The State Water Board is a delegated agency and is authorized to issue, implement, and enforce NPDES permits." *S.F. Baykeeper v. Levin Enters*., 12 F. Supp. 3d 1208, 1211 (N.D. Cal. 2013)

pollutants and BCT for conventional pollutants.[4]  *Id*., p. 82 (Effluent Limitation V(A)(2)). The General Permit requires that dischargers develop and implement a Storm Water Pollution Prevention Plan meeting specified requirements.  *Id*., p. 91 (Section XIV).

### C.   Standard Governing Dismissal Under Rule 12(b)(6).

For a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[5] the Supreme Court has established the following standard: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  There is an "assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).)  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 548 (citing *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)).

---

[4] The type of technology-based controls applicable to a discharge depends upon the type of pollutant.  For existing sources, toxic and non-conventional pollutants are subject to BAT. See 33 U.S.C. §§ 1311(b)(2)(A), (C), (D), (F), 1314(b)(2).  Conventional pollutants are subject to BCT.  *See* 33 U.S.C. § 1311(b)(2)(E); 33 U.S.C. §§ 1314(a)(4), 1314(b)(4). Conventional pollutants are TSS, O&G, pH, biochemical oxygen demand, and fecal coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional. *Id*.; 40 C.F.R. § 401.15.

[5] All subsequent references to Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

In considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of "matters of public record" but may not take notice of facts that may be "subject to reasonable dispute." *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Concerning evidence that is outside of the complaint, a court may not take notice of facts favorable to a defendant that could be reasonably disputed. *Id*.

### D.   Standard Governing Dismissal Under Rule 12(b)(1).

"When a motion to dismiss attacks subject-matter jurisdiction under Rule 12(b)(1) on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor." *City of L.A. v. Wells Fargo & Co.*, 2014 U.S. Dist. LEXIS 72818, *5 (C.D. Cal. 2014); *see Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 2012 U.S. Dist. LEXIS 44311, *38 (E.D. Cal. 2012) (when "the complaint is challenged on its face as failing to support federal jurisdiction…allegations in the complaint are taken as true and construed in the light most favorable to a plaintiff."); *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). The *Twombly* and *Iqbal* standards "apply in equal force to Article III standing when it is being challenged on the face of the complaint." *City of L.A. v. Wells Fargo & Co.*, 2014 U.S. Dist. LEXIS 72818 at *5. A plaintiff can survive a Rule 12(b)(1) motion "by showing any arguable basis in law for the claim made." *Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 611 (6th Cir. 2008).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

## IV.    LEGAL ARGUMENT

### A.    CCAEJ Has Standing to Bring the Present Action.

#### 1.    CCAEJ Sufficiently Alleges Discharges to Waters of the United States.

CCAEJ's FAC clearly alleges that the Site discharges to "waters of the United States" at a level that would be more than sufficient to survive Defendant's Rule 12(b)(1) challenge at the earliest stage of the present litigation.  The FAC alleges that the Site discharges storm water "via at least one outfall located in the northwest corner of the Site" that "discharges storm water and pollutants contained in that storm water to a tributary of Reach 3 of the Santa Ana River," which is a water of the United States.  FAC, ¶ 69.  Further, the FAC alleges that Defendant discharges storm water to channels that flow throughout the Site that have been identified as waters of the United States pursuant to a report prepared for Defendant.  *Id*., ¶ 69.

These factual allegations, which must be accepted as true for a Rule 12(b)(1) challenge, state a facially plausible claim that satisfy the Clean Water Act's jurisdictional requirement that Defendant's discharges flow to waters of the United States.  *See* 33 U.S.C. § 1362(7); *Iqbal,* 556 U.S. at 678.  The facts alleged regarding Defendant's discharges to the Santa Ana River need only allow the Court to draw the reasonable inference that Defendant's discharges have a nexus to or are adjacent to a navigable water.  *Id.* at 678; *N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 1000 (9th Cir. 2007) ("*Healdsburg*").  Here, CCAEJ alleges that the discharges flow to a tributary of the Santa Ana River, which is a water of the United States.  CCAEJ alleges that the tributary *itself* is a water of the United States.   These waters undoubtedly would qualify as "waters of the United States" pursuant to the EPA's definition.  40 C.F.R. § 122.2.[6]

Defendant's facial 12(b)(1) challenge relies heavily on the plurality opinion

_____

[6] CCAEJ notes that the EPA's regulation defining "waters of the United States" is explicitly referenced in the General Permit.  Def. RJN, Ex. B, p. 266.

interpreting the definition of "waters of the United States" set forth by the Supreme Court in *Rapanos v. United States*, 547 U.S. 715 (2006) ("*Rapanos*"), yet entirely ignores the leading Ninth Circuit case interpreting and applying *Rapanos – N. Cal. River Watch v. City of Healdsburg*. In *Healdsburg*, the Ninth Circuit considered whether sewage discharges into a pond located next to an aquifer, which was located next to the Russian River, would be considered subject to the Clean Water Act. 496 F.3d at 995. The court found that Justice Kennedy's concurrence provides the guiding rule for the Ninth Circuit:

> Justice Kennedy's concurrence provides the controlling rule of law for our case. [internal citation omitted] Justice Kennedy said that when wetlands are isolated, or adjacent only to a non-navigable tributary of a navigable waterway, those wetlands are regulable under the CWA only if there is a significant nexus between the wetlands at issue and the navigable waterway. *Rapanos*, 126 S. Ct. at 2248.

*Id*. at 999-1000. The court continued:

> Justice Kennedy thus established a substantial nexus test for the applicability of the Act, concluding that "absent a significant nexus, jurisdiction under the Act is lacking." [*Rapanos*] at 2241. But, at the same time, Justice Kennedy also reaffirmed the holding of [*United States v.*] *Riverside Bayview Homes* [106 S. Ct. 455 (1985)] that wetlands adjacent to navigable waterways are covered by the Act, saying that by virtue of the "reasonable inference ecologic interconnnection," [sic] assertion of jurisdiction "is sustainable under the Act by showing adjacency alone." *Id*. at 2248. This indicates that a significant nexus may be inferred when wetlands are adjacent to navigable waters.

*Id*. at 1000. The *Healdsburg* court found that the pond at issue met both the "adjacency" test of *Riverside Bayview Homes* as well as the "substantial nexus" test of *Rapanos*. *Id*. Subsequent to *Healdsburg*, the Ninth Circuit has found that intermittent streams that empty into rivers that are waters of the United States can be waters of the United States. *United States v. Moses*, 496 F.3d 984, 989-991 (9th Cir. 2007).

Here, Defendant should be well aware that the Site's storm water discharges into channels that are not just adjacent, but directly flow into the Santa Ana River pursuant to

the "substantial nexus" test as well as the adjacency test.  Defendant's own SWPPP describes the existing drainage at the Site: "The site has drainage courses that drain to the Northwest corner of the site, then into the Santa Ana River."  Def. RJN, Ex. E, p. 13; *See also id*. at p. 89 (map showing adjacency of Site to Santa Ana River).  Further, Defendant's own certified Notice of Intent to comply with the General Permit indicates that the receiving water for the Site is the Santa Ana River.  Pl. RJN, Ex. C.

Moreover, Defendant submitted to various state and federal agencies a "Jurisdictional Delineation" report prepared by Defendant's own consultant intended to identify waters of the United States associated with Defendant's project.  Defendant's report identifies unequivocally "the areas of the [Site] that are subject to…California Regional Water Quality Control Board jurisdiction under Sections 401 and 402 of the Clean Water Act[,]" *i.e.*" waters of the United States."  Declaration of Douglas J. Chermak in Support of Opposition to Motion to Dismiss ("Chermak Dec."), Ex. 1, p. 4.[7] The Jurisdictional Delineation examines the Unnamed Blue line stream channel and tributaries that run throughout the Site and finds that they connect hydrologically to the Santa Ana River.  *Id*, pp. 6, 8-9.  In its analysis of whether waters at the Site would be considered traditional navigable waters subject to federal jurisdiction, the report explicitly considers the *Rapanos* decision, relating the key points of both the plurality decision as well as the Kennedy "significant nexus" test.  *Id*., pp. 14-16.  After considering the "significant nexus" test factors pursuant to the "Rapanos [Jurisdictional Delineation" process," the report concludes that the majority of the tributaries at the Site are waters of the United States.  *Id*., pp. 41-42, 57.  This includes the two tributaries that converge at the northwest corner of the Site, the location of the Site's storm water outfall as alleged in CCAEJ's complaint and described in Defendant's SWPPP.  *See id*., pp 39, 42; FAC ¶¶ 65-66; Def. RJN, Ex. E, p. 13.  The report also includes a map of its federal connectivity

---

[7] Citation to Exhibit 1 are to the page number at the bottom of the report.

analysis, showing the direct connection of waters at the Site to the Santa Ana River and identifying waters of the United States identified at the Site. Chermak Dec., Ex. 1, p. 40.

Defendant thus apparently commissioned for several regulatory agencies an independent federal jurisdictional analysis of the waters at its Site that was essentially based on the *very legal premise* it is now presenting to the Court. Defendant chose to hide that information from the Court and instead advanced arguments that directly contravene the report's findings. In light of the allegations in the FAC, as well as the additional evidence presented in the Jurisdictional Delineation report, Defendant cannot truthfully claim that CCAEJ has failed to allege facts that support the jurisdictional requirement that the Site's discharges flow to "waters of the United States." The Court should reject its argument.

### 2. CCAEJ's FAC Sufficiently Alleges Ongoing Violations.

CCAEJ agrees that only violations that are ongoing at the time a complaint is filed will meet the jurisdictional requirement to bring a CWA citizen suit. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49, 57 (1987). CCAEJ also agrees that it must assert good faith allegations of ongoing violations in order to survive a motion to dismiss. *Sierra Club v. Union Oil Co. of California*, 853 F.2d 667, 669 (9th Cir. 1988). "The citizen plaintiff…need not prove the allegations of ongoing noncompliance before jurisdiction attaches." *Id*.

Accordingly, in each of the causes of actions in its FAC, CCAEJ alleges that Defendant's violations are ongoing and continuous. FAC, ¶¶ 100, 108, 112, 117, 124. The FAC is replete with factual allegations undergirding CCAEJ's contentions of violations of the General Permit. *Id*., ¶¶ 52-95. Further, CCAEJ alleges that the stabilization date for the construction is April 10, 2020, implying that, because the construction project is ongoing, Defendant's violations are likely to continue. *Id*., ¶ 69; *See Verse Two Props., LLC v. MedPlast Fremont, Inc.*, 2015 U.S. Dist. LEXIS 152800, *12, (N.D. Cal. 2015) (observation that CWA violations are likely to continue if there is

an allegation that operations will continue).  CCAEJ's factual allegations of Defendant's Clean Water Act violations, accepted as true for the purposes of a Rule 12(b)(1) challenge, thus set forth a plausible claim that satisfy the Clean Water Act's jurisdictional requirement that Defendant's violations were ongoing at the time the Complaint was filed.  *Iqbal,* 556 U.S. at 678; *Sierra Club v. Union Oil Co. of California*, 853 F.2d at 669.

Defendant's entire argument that CCAEJ's allegations of ongoing violations are insufficient is based on a *wholly* unsupported claim that the "Site has been subject of numerous onsite inspections by the Regional Board before, during and after the 60-day notice period, and where issues were identified, FRA promptly implemented actions to resolve all issues to the Regional Board's satisfaction."  Defendant's Motion to Dismiss ("Def. Br."), 20:24-27.[8]  The *only* evidence it subsequently introduces for this spurious claim is in the form of a four-sentence e-mail from an engineer from the Regional Board. *See* Def. RJN., Ex. C, p.1; Def. Br., 20:27-28, 21:1-8.  This short e-mail fails to rebut the presumptive truthfulness of CCAEJ's allegations of ongoing discharges for several reasons.  First, Defendant mischaracterizes the e-mail as a conclusion and confirmation of the Regional Board that Defendant's ostensible "corrective action taken…fully resolved any issues raised in [CCAEJ's] Notice of Intent to File Suit or otherwise, and that no further action was necessary to achieve permit compliance at the Site."  Def. Br., 21:2-4. CCAEJ notes that the e-mail is not from the Chair of the Regional Board or its Executive Officer; it is merely from a Water Resources Control Engineer.  The e-mail hardly represents the official view of the Regional Board.

Second, CCAEJ observes that the e-mail is responding to an attached correspondence from one of Defendant's attorneys dated May 8, 2017 ("Attorney Letter"), which was sent approximately seven weeks after CCAEJ sent Defendant its

---

[8] Page number references to documents filed by Defendant are to the number at the top of the page when filed on ECF.

March 21, 2017 Notice of Violations.  While the Attorney Letter mentions three purported site inspections by the Regional Board (April 18, 2015; September 16, 2016; and January 20, 2017), the e-mail fails to confirm whether these inspections ever occurred.  Moreover, *no* inspections during and/or after the 60-day notice period, which commenced on March 21, 2017, are even mentioned.

Third, Defendant claims that the e-mail confirms that the Defendant resolved all issues raised in the Notice of Violations; however, *neither* the e-mail *nor* the Attorney Letter even mentions the Notice of Violations.  Although CCAEJ sent its Notice of Violations to the Regional Board, the e-mail explicitly responds only to information submitted by *Defendant*.  Furthermore, a close comparison of the Notice of Violations with the Attorney Letter reveals that the Notice Letter contains myriad issues that are not mentioned in the Attorney Letter.  The Notice of Violations raises numerous alleged violations of the General Permit at the Site, including, *inter alia*, violations of Effluent Limitation V(A)(2), Discharge Prohibition III(A), Receiving Water Limitations VI(A) and VI(B), sediment control requirements, Risk Level 2 monitoring and reporting requirements, and failure to comply with Annual Reporting Requirements for the 2015-2016 year.  FAC, Ex. A, pp. 5-8, 10-14.  The Attorney Letter mentions *none* of these alleged violations.  Nor does the Regional Board e-mail mention any site inspection in light of the Notice of Violations.  It is thus absurd to claim that a pithy e-mail from a Regional Board staff person resolved the issues in CCAEJ's Notice of Violations, many of which issues are now alleged in the FAC.

Fourth, to the extent that the Regional Board e-mail and attached Attorney Letter are even proper for judicial notice, at best, the only relevance of those documents would be for the fact that certain statements were made, not to prove the truth of those documents.  *See Cactus Corner, LLC v. U.S. Dept. of Agric.*, 346 F.Supp.2d 1075, 1100 (E.D. Cal. 2004); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  Further, the factual information asserted in public records cannot be used to create or

resolve factual issues. *Coalition for a Sustainable Delta v. Fed. Emerg. Mgmt. Agency*, 812 F.Supp.2d 1089, 1093 (E.D. Cal. 2011) (citing *Coalition for a Sustainable Delta v. McCamman*, 725 F.Supp.2d 1162, 1183-84 (E.D. Cal. 2010)).  Thus, because Defendant's entire argument that CCAEJ has not sufficiently alleged ongoing violation is premised upon the factual information in a judicially noticed document that is subject to dispute, Defendant's argument must fail.

Fifth, Defendant's argument directly conflicts with the specific actions a state agency must take to preempt a citizen's effort to enforce violations of the Act.  Section 1319(g) specifies which state agency enforcement efforts can preclude a citizen suit for civil penalties.  33 U.S.C. § 1319(g)(6); *California Sportfishing Protection Alliance v. City of W. Sacramento*, 905 F.Supp.792, 806-807 (E.D. Cal. 1995).  These include, for example, filing a lawsuit for the same violations or assessing a civil administrative penalty. 33 U.S.C. § 1319g(6)(A)(ii) and (iii).  The statute and accompanying regulations do not include the sending of an incomplete email by an agency staff person as one of the enforcement methods worthy of preempting a citizen's efforts to enforce the CWA.

Lastly, Defendant's argument is inconsistent with one of Congress' core intentions for providing a citizen enforcement mechanism in the CWA – for private citizens to be empowered to step into the shoes of the state or federal agencies when they fail to enforce violations. *Ass'n to Protect Hammersley v. Taylor Res.*, 299 F.3d 1007, 1014 (9th Cir. 2002)*; Hawai'i Wildlife Fund v. County of Maui*, 24 F.Supp.3d 980, 990 (D. Haw. 2014); *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*, 777 F. Supp. 173, 180 (D. Conn. 1991) "'[C]itizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests.'" *Friends of Earth v. Conrail*, 768 F.2d 57, 63 (2d Cir. 1985) (citing *Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d Cir. 1976).  In order to effectuate that intent, it cannot be the rule that, if an agency staff person says anything positive to a discharger in an email, no citizen can then seek to enforce any alleged violations of the CWA against that

discharger.  Such a rule would give state agencies carte blanche to in effect write the citizen suit provision and the detailed preemption provisions out of the CWA on a case-by-case basis.

**B.    CCAEJ's FAC Provides Sufficient Legal and Factual Basis in Support of Its Allegations that Defendant is in Violation of the General Permit.**

**1.    CCAEJ has Alleged Sufficient Legal and Factual Support for Its First Cause of Action.**

CCAEJ's First Cause of Action is straightforward—it alleges that Defendant is in ongoing violation of Discharge Prohibition III(A) of the General Permit.  This prohibition provides that "Dischargers shall not violate any discharge prohibitions contained in applicable Basin Plans or statewide water quality control plans."  Def. RJN, Ex. B, p. 74. The applicable Basin Plan to the Site is the "Water Quality Control Plan for the Santa Ana River Basin (Region 8)."  FAC, ¶ 36.  The pertinent discharge prohibition in the Basin Plan is a general prohibition that the discharge of PCBs to surface waters is prohibited.  Pl. RJN, Ex. D, p. 5-6; FAC, ¶¶ 47, 98.  CCAEJ also alleges in the FAC that Defendant has discharged storm water containing PCBs to surface waters.  FAC, ¶¶ 74-77, 99.  The First Cause of Action contains an allegation that this violation is ongoing and continuous.  *Id.* at ¶ 100.  CCAEJ's FAC therefore contains sufficient factual matter which, accepted as true, states a claim for relief for its First Cause of Action that is plausible on its face.  *See Iqbal*, 556 U.S. at 678.

Defendant's argument that CCAEJ's First Cause of Action fails to state a claim for relief is confusing and unavailing.  Defendant first makes an argument about numeric water quality standards, which has nothing to do with the First Cause of Action. Defendant then makes a permit shield argument, presumably claiming that Defendant's discharges of PCBs would be shielded by its purported compliance with the General Permit.  An NPDES permit holder is shielded from liability under the CWA provided that: "(1) the permit holder complies with the express terms of the permit and with the

Clean Water Act's disclosure requirements and (2) the permit holder does not make a discharge of pollutants that was not within the reasonable contemplation of the permitting authority at the time the permit was issued." *Piney Run Pres. Ass'n v. County Comm'rs*, 268 F.3d 255, 259 (4th Cir. 2001). "A party must meet both prongs of this test in order to qualify for the shield." *S. Appalachian Mt. Stewards v. A & G Coal Corp.*, 758 F.3d 560, 565 (4th Cir. 2014).

With respect to the first prong, the General Permit's Discharge Prohibitions *expressly* incorporate the terms of the Basin Plan, which in turn provides a prohibition against discharges of PCBs. With respect to Discharge Prohibitions, the Findings section of the General Permit explicitly states that "this General Permit incorporates discharge prohibitions contained in water quality control plans, as implemented by the nine Regional Water Boards." Def. RJN, Ex. B, p. 61; *See also id.* at p. 14 (Rationale section providing the same explanation). Indeed, NPDES permits may "incorporate[] pollution standards promulgated in other agency documents such as the Basin Plan." *NRDC v. County of L.A.*, 725 F.3d at 1199 (9th Cir. 2013). California's General Permit for industrial storm water discharges, an analogous NPDES general permit to the general construction permit presently at issue, also incorporates standards from other agency documents, such as the Basin Plan and the California Toxics Rule. *Baykeeper v. Kramer Metals, Inc.*, 619 F.Supp.2d at 920, 926. Other NPDES permits also rely on incorporation by reference. *Md. Dep't of the Env't v. Riverkeeper*, 447 Md. 88, 172 (Md. 2016); *Sherrill v. Mayor & City Council*, 31 F.Supp.3d 750, 774 (D. Md. 2014).

Since the first prong has not been satisfied, the Court need not go any further. Nevertheless, with respect to the second prong, CCAEJ notes that Defendant has not made any evidentiary showing whether the discharge of PCBs was within the reasonable contemplation of the permitting authority at the time the permit was issued. Defendant does not mention when the General Permit was issued. Without any citation or reference to any document, Defendant makes an unsupported statement that the Regional Board

requested that Defendant sample for PCBs.  Def. Br., 25:7-9.  This has no reference to dates or the time the Permit was issued.  Further, the Regional Board is not even the permitting authority; the General Permit is issued by the State Board.  Def. RJN, Ex. B, pp. 51-53.  Without substantial briefing and with significant disputes of fact, this Court must deny Defendant's permit shield claim.  *See S.F. Baykeeper v. Levin Enters.*, 12 F.Supp.3d at 1237.

### 2. CCAEJ has Alleged Sufficient Legal and Factual Support for Its Second Cause of Action.

CCAEJ's Second Cause of Action alleges that Defendant has been discharging polluted storm water from the Site in violation of certain Receiving Water Limitations in the General Permit.  FAC, ¶¶ 102-108.  Section VI of the General Permit contains the following Receiving Water Limitations:

A. The discharger shall ensure that storm water discharges and authorized non-storm water discharges to any surface or ground water will not adversely affect human health or the environment.

B. The discharger shall ensure that storm water discharges and authorized non-storm water discharges will not contain pollutants in quantities that threaten to cause pollution or a public nuisance.

C. The discharger shall ensure that storm water discharges and authorized non-storm water discharges will not contain pollutants that cause or contribute to an exceedance of any applicable water quality objectives or water quality standards (collectively, WQS) contained in a Statewide Water Quality Control Plan, the California Toxics Rule, the National Toxics Rule, or the applicable Regional Water Board's Water Quality Control Plan. (Basin Plan).

Def. RJN, Ex B, p. 85.

In support of its Second Cause of Action, CCAEJ alleges the applicable water quality objectives and water quality standards that are contained in the California Toxics Rule and the Basin Plan.  FAC, ¶¶ 44-46, 48.  These water quality standards pertain to surface waters.  Def. RJN, Ex. B, p. 22 ("Water quality standards consist of designated beneficial uses of surface waters and the adoption of ambient criteria to protect those

uses"). CCAEJ then alleges that both Defendant and the Regional Board have measured levels of PCBs in storm water discharges from the Site that exceed the applicable water quality standard for PCBs from the California Toxics Rule. FAC, ¶¶ 73-77, 48.[9] CCAEJ also alleges that it has collected and analyzed storm water discharged from the Site and measured exceedances of the applicable water quality objectives and standards for lead, copper, zinc, and COD. *Id*., ¶ 78. Thus because CCAEJ has alleged sampling results of pollutants in excess of levels incorporated by the General Permit, CCAEJ has alleged sufficient factual matter which, accepted as true, states a claim for relief for its Second Cause of Action that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

The water quality standards referred to in the General Permit that CCAEJ alleges Defendant exceeded apply directly to Defendant's storm water discharges from the Site. In an analogous provision in California's General NPDES Permit for Industrial Storm Water Discharges, courts have found that a Receiving Water Limitation that provides "that storm water discharges 'shall not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan'" requires that the water quality standards set forth in the California Toxics Rule apply directly to storm water discharges. *Baykeeper v. Kramer Metals, Inc.*, 619 F.Supp.2d at 926-929; *Baykeeper v. Int'l Metals Ekco, Ltd.*, 619 F.Supp.2d at 947-950; Pl. RJN, Ex. B (*Santa Monica BayKeeper v. SunLite Salvage*, slip op., Case No. Civ.99-4578 WDK (C.D. Cal. 1999), p. 10). Further, the General Permit's Rationale for the Receiving Water Limitations, specifically recommends that dischargers review applicable water quality standards for their sites by finding the applicable Basin Plan and the EPA's National Toxics Rule and California Toxics Rule regulations. Def. RJN, Ex. B, p. 22 (Section G). Defendant's contention that these water quality standards are inapplicable is thus wholly without merit.

---

[9] CCAEJ also alleges that PCBs have harmful environmental and health effects. FAC, ¶ 60.

Defendant's argument that PCBs, lead, copper, zinc, and COD are non-visible pollutants that do not require monitoring is unavailing.  The Receiving Water Limitations apply to water discharges from a site; they operate independently of any of a discharger's separate monitoring requirements.  The General Permit defines non-visible pollutants as "[p]ollutants associated with a specific site or activity that can have a negative impact on water quality, but cannot be seen though observation (ex: chlorine).  Such pollutants being discharged are not authorized." *Id.* at p. 262.  Thus, whether Defendant has monitored for them itself is irrelevant.  If Defendant is discharging the "non-visible" pollutants in excess of the General Permit's Receiving Water Limitations, then Defendant is in violation of the General Permit.  *See* 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. § 122.41(a); Plaintiff RJN, Ex. A, p. 2).

Defendant's reliance on a judicially-noticed brief letter from the Department of Toxic Substances Control ("DTSC") is both without merit and is insufficient to rebut CCAEJ's plausible factual allegations that Defendant is violating Receiving Water Limitation VI(B) at its Site.  Def. Br., 26:17-21; Def. RJN, Ex. D.  There are several reasons why the DTSC letter is insufficient to rebut CCAEJ's allegations.  First, CCAEJ notes that the letter contains no description, or even a map, of how the "Offsite Northwest Drainage Area" specifically pertains to storm water discharges from the Site.  The DTSC letter makes no mention of water quality or surface water sampling.  It makes no mention of the Basin Plan or the California Toxics Rule.[10]  Second, the Regional Board, not the DTSC, is the agency tasked with regulating water quality in the State.  CCAEJ would dispute any position from DTSC ostensibly involving water quality.  *See Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  Finally, the letter

---

[10] CCAEJ also notes that Defendant claims that "[f]rom at least 2010 to 2014, the Offsite Northwest Drainage Area was subject to numerous investigations by the City of Riverside under DTSC oversight, which involved extensive sampling of groundwater and the adjacent Santa Ana River streambed sediments," yet provides *no* support for this statement.  *See* Def Br., 26, FN9.

is dated May 19, 2014, and cannot offer any guidance about CCAEJ's alleged ongoing violations that have occurred in the over three years since that letter was ostensibly written.  Therefore, the Court should reject Defendant's claim that the Third Cause of Action fails to state a claim for relief.

### 3. CCAEJ has Alleged Sufficient Legal and Factual Support for Its Third Cause of Action that Defendant Failed to Implement BAT/BCT.

CCAEJ's Third Cause of Action alleges that Defendant failed to comply with Effluent Limitation V(A)(2) of the General Permit, which requires Defendant to implement BAT/BCT to reduce or prevent pollutants in its storm water discharges.  FAC, ¶¶ 110-112; *See also id.* at ¶ 20.  The FAC contains numerous allegations in support of this claim.  It describes the requirements for Risk Level 2 dischargers to use sediment basins that are designed, at a minimum, in accordance with the method provided in the California Stormwater Quality Association's ("CASQA") Construction Best Management Practice ("BMP") Guidance Handbook.  *Id.* at ¶ 25.  It sets forth the various requirements from that handbook.  *Id.* at ¶¶ 26-31.  The FAC contains allegations that the storm water management practices to reduce pollutants at the Site are inadequate, including a lack of sufficient structural controls and lack of adequate storm water pollutant treatment technologies.  *Id.* at ¶ 70.  It includes several factual allegations why the sediment basins at the Site are inadequate.  *Id.* at ¶¶ 79-84.  It also includes a general allegation that the Site does not have BAT/BCT.  *Id.* at ¶ 93.

The General Permit defines BAT as follows:

As defined by USEPA, BAT is a technology-based standard established by the Clean Water Act (CWA) as the most appropriate means available on a national basis for controlling the direct discharge of toxic and nonconventional pollutants to navigable waters.  The BAT effluent limitations guidelines, in general, represent the best existing performance of treatment technologies that are economically achievable within an industrial point source category or subcategory.

Def. RJN, Ex. B, p. 257.  It defines BCT as follows:

> As defined by USEPA, BCT is a technology-based standard for the discharge from existing industrial point sources of conventional pollutants including biochemical oxygen demand (BOD), total suspended sediment (TSS), fecal coliform, pH, oil and grease.

*Id*.

The CWA sets forth various factors to consider to assess whether a discharger has achieved BAT/BCT, which include, *inter alia*, "the age and equipment of the facilities involved, the process employed, the engineering aspects of the application of various types of control techniques, [and] process changes." 33 U.S.C. §§ 1314 (b)(2)(B), b(4)(B); *Baykeeper v. Kramer Metals, Inc.*, 619 F. Supp. 2d at 921-922; *Cal. Sportfishing Prot. Alliance v. Cal. Ammonia Co.*, 2007 U.S. Dist. LEXIS 8845, *22, (E.D. Cal. 2007). "Assessing such factors is often considered a question of fact." *Cal. Sportfishing Prot. Alliance v. Cal. Ammonia Co.*, 2007 U.S. Dist. LEXIS at *27 (citing *Hudson Riverkeeper Fund v. Orange & Rockland Utils.*, 835 F.Supp.160, 165 (S.D.N.Y. 1993).

The General Permit provides the following examples of BAT/BCT technologies:

> BAT/BCT technologies not only include passive systems such as conventional runoff and sediment control, but also treatment systems such as coagulation/flocculation using sand filtration, when appropriate. Such technologies allow for effective treatment of soil particles less 0.02 mm (medium silt) in diameter. The discharger must install structural controls, as necessary, such as erosion and sediment controls that meet BAT and BCT to achieve compliance with water quality standards.

Def. RJN, Ex. B, p. 16. Thus, Plaintiff's allegations that Defendant has not implemented the requisite BAT/BCT technologies at the Site, accepted as true, are more than sufficient to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

Apparently, Defendant believes that BMPs are tantamount with BAT/BCT. The header of Defendant's argument section is that "Plaintiff fails to allege FRA did not implement BMPs." Def. Br., 27:3. It later states that "Plaintiff asserts that FRA has not implemented BAT and BCTs [sic] (*i.e., BMPs*)…" *Id*. at 27:5 (emphasis added). Finally, Defendant states that "Plaintiff contradicts its claim that FRA has not

implemented BMPs…" *Id.* at 27:14-15.  Quite the opposite, CCAEJ's Third Cause of Action is that Defendant failed to implement BAT/BCT; it does not even mention "BMPs."  Of course, BMPs are different than BAT/BCT.  The General Permit provides a separate definition of BMPs from its definition of BAT and BCT.[11]  Def. RJN, Ex. B, pp. 257-258.  A certain level of BMPs is necessary to achieve BAT/BCT at any given construction site, but simply having BMPs, as Defendant would lead the Court to believe, does not in itself constitute BAT/BCT.  Indeed, as the General Permit recognizes, "additional BMPs [may be] required to … meet BAT/BCT requirements."  *Id.* at p. 83 (General Permit, §§ V(B)(4)(a), (b)).  The fact that Defendant has some sediment basins (i.e. BMPs) in place does not mean that they have achieved BAT/BCT.  On the contrary, CCAEJ's very argument in its Third Cause of Action is that those sediment basins are insufficient to meet the BAT/BCT standard.  CCAEJ's Third Cause of Action is thus sufficiently pled and surely should survive Defendant's inapposite challenge.

**4.   CCAEJ has Alleged Sufficient Legal and Factual Support for Its Fourth Cause of Action.**

CCAEJ's Fourth Cause of Action is that Defendant is failing to comply with the Risk Level 2 requirements set forth in the General Permit, specifically with respect to the requirements for the sediment basins at the Site.  FAC, ¶¶ 114-117.  This Cause of Action is premised on some of the same legal and factual allegations that undergird the Third Cause of Action.  The FAC describes the requirements for Risk Level 2 dischargers to use sediment basins that are designed in accordance with the method provided in the CASQA Construction BMP Guidance Handbook, and sets forth that handbook's requirements.  *Id.* at ¶ 25-31.  CCAEJ then makes several factual allegations why the sediment basins are

---

[11] The General Permit defines BMPs as "BMPs are scheduling of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the discharge of pollutants. BMPs also include treatment requirements, operating procedures, and practices to control site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage."  Def. RJN, Ex. B, pp 257-258.

inadequate.  *Id*. at ¶¶ 79-84.  Taken together and presumed to be true, these allegations sufficiently state a facially plausible claim for relief with respect to CCAEJ's Fourth Cause of Action.  *See Iqbal*, 556 U.S. at 678.

While Defendant argues that the Fourth Cause of Action fails as a matter of law because the CASQA Handbook is merely a design guidance and not a hard-and-fast regulatory rule, the General Permit is clear that "[o]n sites where sediment basins are to be used, Risk Level 2 dischargers *shall*, at minimum, design sediment basins according to the method provided in CASQA's Construction BMP Guidance Handbook."  Def. RJN, Ex. B, p. 169 (Attachment D, § E(2)) (emphasis added).

The remainder of Defendant's argument concerning CCAEJ's Fourth Cause of Action is either confusing or impermissible.  Defendant cites to page 167 of Exhibit E, which appears to be a page from the CASQA Handbook referencing Sediment Traps.  *See* Def Br., 28:6-7.  Sediment traps have nothing to do with CCAEJ's allegations.  Defendant includes footnote 10, which appears to be an excerpt from the Handbook, although no citation is included nor any explanation why it is relevant.

Defendant next claims that "the Board approved SWPPP includes the physical designs and detailed schematics for the sediment basins."  *Id*. at 28:8-9. CCAEJ responds that Defendant does not lay any foundation for the assertion that the Board "approved" the SWPPP, nor does it state to which "Board" it is referring.  The citation for this claim is also puzzling.  Pages 88 and 89 of the SWPPP (Def. RJN Ex. B) do not contain any designs and schematics for the sediment basins.[12]  Regardless, as demonstrated above, the truth of the contents of judicially noticed documents lacking a proper foundation, is not

---

[12] To the extent that Defendant meant to refer to pages 90 and 91 of Exhibit E [which include Sheets 1 & 2, as opposed to Figures 1 & 2], these pages contain schematics for gravel bags, pumps, and sediment barriers, but nothing for anything called a "sediment basin."  Defendant also offers no explanation of Phase 1 and Phase 2 of the construction period, and why those would be relevant.

permissible for Defendant's motion, and the factual information asserted in a record cannot be used to create or resolve factual issues. *See supra*, Section IV(A)(2).

In the same vein, the remainder of Defendant's argument against Plaintiff's Fourth Cause of Action must be disregarded since it entirely relies on disputed factual information set forth in its judicially noticed documents. *See* Def. Br. 28:10-20. Since CCAEJ's FAC alleges that the Defendant's basins are not properly designed, Defendant's September 29, 2016 letter to the Regional Board containing its own characterization of its Sediment Basin design and construction is certainly subject to reasonable dispute and the Court thus may not consider the "facts" contained in that letter. *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d at 1052; Def. RJN, Ex. F, p. 2; FAC, ¶¶ 79-84. Moreover, contrary to Defendant's assertion that the "Regional Board confirmed FRA's sediment basin design compliance," on its face, the e-mail from the Regional Board staff person *does not even mention* Defendant's sediment basin design compliance. *Compare* Def. Br. 28:17-20 *with* Def. RJN, Ex. C, p. 1. This Court should therefore reject Defendant's argument that Plaintiff's Fourth Cause of Action fails to state a claim for relief.

### 5. CCAEJ has Alleged Sufficient Legal and Factual Support for Its Fifth Cause of Action that Defendant Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

CCAEJ's Fifth Cause of Action alleges that Defendant has failed to develop an adequate SWPPP for the Site, specifically failing to comply with the requirements of Sections XIV(A) and (B) of the General Permit. FAC, ¶¶ 119-124. The FAC describes the legal requirements for a SWPPP pursuant to the General Permit. *Id.*, ¶¶ 32-34. CCAEJ then alleges that it has reviewed the Site's SWPPP and found it to be inadequate. *Id.*, ¶ 85. CCAEJ then makes specific allegations about why the SWPPP is insufficient. *Id.*, ¶¶ 80, 86-92. It is clear that CCAEJ's allegations provide a sufficient factual basis for a claim for relief.

Defendant's argument concerning CCAEJ's Fifth Cause of Action has no basis. To the extent that CCAEJ failed to plead any facts in support of its claim, CCAEJ corrected

any potential perceived deficiencies in the FAC. *See* Def. Br., 29:13-14. Defendant's next argument, that the Regional Board reviewed and approved the SWPPP, is entirely unsupported, to the extent that it would even be relevant. *See id.*, 29:14-16. Defendant has not presented any evidence that the Regional Board actually reviewed and approved the SWPPP. Nothing in the General Permit anticipates the regional boards reviewing and approving SWPPPs. And even if a SWPPP were approved by a Regional Board staff person, it would not preclude a citizen from arguing otherwise in the context of an enforcement action. *See supra*, Section IV(A)(2). The remainder (and majority) of Defendant's argument, whether the SWPPP incorporates "Risk Level" 2 standards, is a patent misrepresentation of Plaintiff's allegations. *See id.*, 29:16-22. Nowhere in the FAC does Plaintiff allege that the SWPPP failed to incorporate Risk Level 2 General Permit standards. Defendant's argument must fail.

### C. CCAEJ Should Be Granted Leave to Amend.

As described above, CCAEJ properly pled all of its allegations. Should this Court find that Plaintiff did not properly do so, it should grant Plaintiff leave to amend. See *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996) (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment). Rule 15(a) requires that leave to amend should be "freely given when justice so requires." The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend should only be denied on a showing of bad faith, undue delay, prejudice to the opposing party, or futility of the amendment. *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999).

### V.   CONCLUSION

For the foregoing reasons, Defendant FRA's Motion to Dismiss should be denied in its entirety.

Dated: July 21, 2017                    Respectfully submitted,

                                        LOZEAU DRURY LLP


                            By:     _/s/ Douglas J. Chermak_____
                                    Douglas J. Chermak
                                    Attorneys for Plaintiff
                                    CENTER FOR COMMUNITY ACTION AND
                                    ENVIRONMENTAL JUSTICE